

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

October 26, 1961

Hon. Charles J. Lieck, Jr.　　　　　Opinion No. WW-1178
Criminal District Attorney
San Antonio, Texas　　　　　　　Re: Whether expenses incurred
　　　　　　　　　　　　　　　　　in the defense of a suit
　　　　　　　　　　　　　　　　　for damages arising out of
　　　　　　　　　　　　　　　　　the purchase of land for
　　　　　　　　　　　　　　　　　a State highway, the orig-
　　　　　　　　　　　　　　　　　inal purchase of which was
　　　　　　　　　　　　　　　　　paid out of Bond Funds may
　　　　　　　　　　　　　　　　　be paid out of the County
　　　　　　　　　　　　　　　　　"General Fund" and related
Dear Mr. Lieck:　　　　　　　　　questions.

　　　　In reference to your inquiry of September 14, 1961,
the relevant facts set out are these:　a bond election was
called by the county to issue bonds in Bexar County Road Dis-
trict No. 1; a pre-election order was passed by the Commis-
sioners Court allocating the proceeds from the sale of bonds
in the event they were voted; certain appraisals were neces-
sary in conjunction with a lawsuit in which the county was a
defendant, growing out of a purchase by the county of a right-
of-way with the proceeds; the Commissioners Court passed an
order authorizing the county auditor to draw voucher warrants
for the appraisal fees, such fees to be charged equally between
the General Road and Bridge Fund--District No. 1 and the Gen-
eral Fund, a constitutional fund.

　　　　Your present three-part inquiry is as follows:

　　　　"1. Can the constitutional fund, commonly known
as the 'General fund' be used for the purpose of pay-
ing expenses incurred in the defense of a suit for
damages arising out of the purchase of the land for
a State Highway, the original purchase price of which
was paid out of Bond Funds, voted at least in part
for such purposes?

　　　　"2. Is the order of the Commissioners Court
which directs that 1/2 of such expenses be paid out
of the 'General Fund' and 1/2 out of the 'Road and
Bridge Fund' a valid order?

"3. Can the remaining balances, or such por-
tion thereof as is necessary, of the bond issue
of December 10, 1954 in Road District No. 1 be
used for the purpose of paying such expenses upon
a proper finding and order of the Commissioners
Court as is provided in the pre-election order?"

The answers to these questions necessitates an ex-
amination of Article 1630, V.C.S. and Section 9, Article VIII
of the Texas Constitution, which are as follows:

"Article 1630. The Commissioners Court by
an order to that effect may transfer the money
in hand from one fund to another, as it may deem
necessary and proper, except that the funds which
belong to the class first shall never be diverted
from the payment of the claims registered in Class
first, unless there is an excess of such funds."

Section 9 of Article VIII of the Texas Constitution
is in part as follows:

"Section 9. . . . provided further that at
the time the Commissioners Court meets to levy the
annual tax rate for each county it shall levy what-
ever tax rate may be needed for the four (4) con-
stitutional purposes; namely, general fund, per-
manent improvement fund, road and bridge fund and
jury fund . . . Once the Court has levied the an-
nual tax rate, the same shall remain in force and
effect during that taxable year, . . ."

We will attempt to answer your first two questions
at the same time since they are interrelated. There are four
constitutional county funds listed in Section 9 of Article
VIII of the Constitution, to-wit: general fund, permanent im-
provement fund, road and bridge fund and the jury fund. It
is too well settled for discussion that the Commissioners
Court cannot levy a tax for one purpose and then spend the
fund for another. (See Attorney General's Opinions O-413
(1939) and S-219 (1956).) Consequently, constitutional funds
may not be transferred from one fund to another. Sanders v.
Looney, 225 S.W. 280.(Civ.App. 1920). The leading authority
on this matter is the landmark case of Carroll v. Williams,
109 Tex. 155, 202 S.W. 504 (1918), where the court specifically
held that the money collected for the various constitutional
funds could not be spent for any other purpose than the pur-
pose for which such fund was set up by the Constitution. In
so holding, the court stated:

". . . Taxes levied ostensibly for any
specific purpose or class of purposes desig-
nated in Section 9 of Article 8, supra, must
be applied thereunto, in good faith; . . ."

Article 1630, V.C.S., on the other hand, deals with
statutory, not constitutional funds. The funds in question
here are constitutional funds, being specifically the "General
Fund" and the "Road and Bridge Fund." In Carroll v. Williams,
supra, the Supreme Court clearly drew a distinction between
constitutional and statutory funds holding that the Commis-
sioners Court under Article 1630, V.C.S., is not authorized
to direct a transfer from one constitutional fund of money
received from taxes levied ostensibly for one purpose into
another fund or expend for another and distinct purpose. (See
Attorney General's Opinion O-2942 (1940).)

Thus, it is clear that the constitutional fund, com-
monly known as the "General Fund" cannot be used to pay appraisal
expenses of a damage suit arising out of the purchase of land
for state highways. So also, the Commissioners Court cannot
direct that such expenses be paid in part out of the "General
Fund" and such order is void to that extent.

Further, as to whether such expenses may be paid out
of the constitutional fund known as the "Road and Bridge Fund,"
your attention is directed to Article 6674n, V.C.S., which
reads in part as follows:

". . . This authority includes the power to
exercise the right of eminent domain by any County
Commissioners Court within the boundaries of a
municipality with the prior consent of the gov-
erning body of such municipality. Provided that
the county in which the State highway is located
may pay for same out of the County Road and Bridge
Fund, or any available county funds."

We are of the opinion that any unencumbered surplus
in the county "Road and Bridge Fund" may be used to pay the
appraisal costs in question under the authority of the above
quoted statute. Such expenditure would escape the prohibitions
of Carroll v. Williams, supra, as it would not be one unrelated
and distinct from the purposes of the "Road and Bridge Fund."
(See Attorney General's Opinions S-137 (1954) and V-694 (1948).)
Thus, in our opinion, the portion of the order of the Commis-
sioners Court prescribing payment out of the "Road and Bridge
Fund" would be valid to that extent.

The remaining part of your inquiry deals with whether these appraisal fees can be paid out of the remaining balances of the fund raised by the bond issue of December 10, 1954, upon a proper finding and order of the Commissioness Court. Reference is made to the Commissioners Court's pre-election allocation order which contained the following paragraph, which is Section 3(c):

"If this Court finds that it is not necessary or desirable to use any of the funds above allocated for the purposes for which such funds are allocated, such funds may be used for any of the other purposes hereinabove set forth; but none of such funds shall ever be used for any project which is not consistent with the overall long term planning of the State Highway Department for State and Federal Highways and Farm-to-Market Highways or Roads in Bexar County, Texas. . . ."

It is the opinion of this office that the paragraph above reserves limited discretion in the Commissioners Court of Bexar County in the expenditure of funds under the pre-election allocation order. The only qualification is that such discretionary expenditure be consistent with the overall long term planning. Murray v. Wilkinson, 32 S.W.2d 823 (Civ. App. 1930). The expenditure of funds for appraisal fees in connection with the defense of a suit growing out of the purchase by the county of certain rights-of-way with the bond election proceeds would seem to be consistent with the overall objectives. (See Attorney General's Opinion S-219, supra.) Thus, we are of the opinion that your third question should be answered affirmatively, and that portion of the remaining balance of the bond proceeds in the Bexar County Road District No. 1 may be used in paying the appraisal expenses here in question.

## S U M M A R Y

Expenses incurred in the defense of a damage suit arising out of the purchase of land for a State Highway (originally purchased with bond funds) cannot be paid with Constitutional funds (i.e. the "General Fund") other than the unencumbered portion of the County Road and Bridge Fund,

but such may be paid out of the remaining
balance of the original bond issue funds.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Eugene B. Smith
Assistant

EBS:dhs


APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
W. O. Schultz
Iola Wilcox
Gordon Zuber
Milton Richardson

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Howard W. Mays